IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MARVIN RAY BERRY**                                                                               **PLAINTIFF**

**V.**                                          **CAUSE NO. 3:14-CV-665-CWR-FKB**

**WEXFORD HEALTH SOURCES, ET AL.**                              **DEFENDANTS**

**ORDER**

Before the Court are a motion to dismiss filed by the private healthcare-provider defendants, a motion for summary judgment filed by the State defendants, the Magistrate Judge's Report and Recommendation (R&R) proposing to grant both motions, and the plaintiff's objection to that R&R. The Court has reviewed the facts and is ready to rule.

**I.**     **Factual Background**

While incarcerated at Central Mississippi Correctional Facility, Marvin Berry filed a formal request for administrative remedy with the Mississippi Department of Corrections. He claimed that employees of the prison's private healthcare provider, Wexford Health Sources, displayed deliberate indifference toward his serious medical needs when they flagrantly disregarded his series of heart attacks as reflux and anxiety. Berry asked for an investigation, termination of the responsible individuals, medical care, several millions dollars in damages, discovery, and the right to proceed in federal court on his claims.

The prison's Legal Claims Adjudicator refused to let Berry enter the Administrative Remedy Program. He or she checked a box indicating that Berry's request was "beyond the power of the Mississippi Department of Corrections to grant." This suit followed.

The defendants now argue that Berry's suit cannot proceed because he failed to exhaust his administrative remedies. The Magistrate Judge agreed, and Berry has objected.

## II.     Substantive Law

Under federal law, prisoners must exhaust administrative remedies if they wish to sue the persons who have violated their constitutional rights. *See* 42 U.S.C. § 1997e(a). Prisoners must administratively exhaust requests for money damages even if the administrative process cannot award them money damages. *Booth v. Churner*, 532 U.S. 731, 739 (2001). As the Supreme Court has put it, "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Id.*

"When 'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint,' exhaustion is not required under the PLRA because there is no 'available' remedy." *Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir. 2010) (quoting *Booth*, 532 U.S. at 736). "[W]hile it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact." *Id.* at 266 (citation omitted) (remanding for discovery).

## III.    Discussion

### A.     Wexford's Motion to Dismiss

The Legal Claims Adjudicator erred when he or she refused to let Berry enter the Administrative Remedy Program. It was within MDOC's power to investigate Wexford's response to Berry's heart attacks, refer the matter to criminal prosecutors, provide additional medical care for Berry, or terminate Wexford's contract, among many other things. And while MDOC may not have been able to force Wexford to pay monetary damages, that still was not a basis to reject Berry's request. Well-established federal law required him to file his request in order to seek money from Wexford in federal court.

The Legal Claims Adjudicator may have thought that a prisoner has no administrative remedy when he wants money from a private prison contractor, since getting damages out of a private company is beyond the power of MDOC to grant. But prisoners in this State routinely exhaust administrative remedies before suing private contractors. *E.g.*, *Smith v. Woodall*, No. 1:14-CV-294, 2016 WL 165021, at *3 (S.D. Miss. Jan. 14, 2016) (SMCI inmate exhausted remedies before suing Wexford); *Davis v. Wexford Health Servs.*, No. 2:11-CV-142, 2013 WL 1180891, at *1 (S.D. Miss. Mar. 20, 2013) (same); *Jackson v. Dunn*, No. 4:13-CV-79, 2014 WL 3385166, at *3 (N.D. Miss. July 9, 2014) (MSP inmate exhausted remedies before suing a Wexford dentist). It is not clear why Berry did not receive the same treatment.

The Legal Claims Adjudicator should have "accepted" Berry's request into the Administrative Remedy Program and sent it on for Step 1 review. From there, Berry would have been able to proceed through Steps 1 and 2, and then file this lawsuit. But the Adjudicator's error halted the entire process. Berry's claim was essentially denied at "Step 0."

To all this, the R&R says Berry should have "corrected" his request and refiled it within five days. Neither the R&R nor the defendants have explained what kind of correction Berry should have made. Correction was inappropriate under MDOC's policy because there was no "technical reason[] or matter[] of form" to fix. Berry's request for administrative remedy was already very detailed as to events, times, names, and dates. It is among the best this Court has seen. It should have been accepted into the program and advanced to Step 1.

Wexford's two-paragraph motion also fails to persuade. First, because it relies upon documents outside of the pleadings – specifically, the documents attached to the State's motion for summary judgment – it too should have been brought as a summary judgment motion. Second, Wexford's argument that this suit should be dismissed because "Berry made no attempt

3

to appeal the original decision" is unfortunate and disingenuous. There is no appeal from a rejection at Step 0.

On this record, when the Legal Claims Adjudicator denied Berry acceptance into the Administrative Remedy Program, he no longer had an available administrative remedy. *See Dillon*, 596 F.3d at 267. His objection is sustained and Wexford's motion to dismiss is denied.

### B. The State's Motion for Summary Judgment

The State acknowledges that Berry filed a request for administrative remedy, but argues that the substance of his grievance was not enough to put MDOC on notice that it sought relief from it, or had any complaints about, MDOC employees. The argument is a fair point, but two reasons support denying the motion at this time.

First, documentary evidence reveals that MDOC executives were personally put on notice of Berry's urgent health needs. After Berry's request for administrative remedy was filed and rejected, he received copies of emails his children had sent to MDOC executives Christopher Epps, Gloria Perry, Archie Longley, and Johnnie Denmark, in which the children had sought immediate medical care for their father. It is not clear how these emails should be considered in this unique situation, where the request for assistance came from family and the inmate's own request for administrative remedy should have been accepted into the ARP program.

Second, had Berry's request for administrative remedy been accepted into the program, MDOC policy suggests that it would have been personally reviewed at Step 2 by a MDOC executives. MDOC obviously had ultimate responsibility to evaluate Berry's grievance and to oversee Wexford's provision of health services at CMCF. Gloria Perry and Commissioner Epps in particular had "authority to provide any relief or to take any action whatsoever" in response to Berry's complaints of inadequate medical care. *Dillon*, 596 F.3d at 267; *see also Porter v.*

*Mississippi Dep't of Corr.*, No. 4:07-CV-70, 2009 WL 902051, at *7 (N.D. Miss. Mar. 30, 2009) ("Defendant Epps repeatedly and boastfully testified that he was the policy maker for MDOC.").[1] Upon receipt of Berry's children's emails, in fact, MDOC officials directed subordinates to look into Berry's situation.[2] It is unfortunate that Berry's final set of heart attacks occurred the very next day.

The dilemma here is that while no formal administrative remedy was sought against particular MDOC employees, specific MDOC executives had the authority to force Wexford to address Berry's heart attacks, were personally put on notice of the problem by Berry's children, and would have been on notice of the problem through the formal ARP program had Berry's grievance not been improperly rejected by a MDOC employee. Given these facts, the better course of action is to deny MDOC's motion without prejudice.

## IV. Conclusion

Berry's objection is sustained and the dispositive motions are denied.

**SO ORDERED**, this the 26th day of July, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[1] In deposition testimony elicited during *Tillman v. Epps*, No. 3:11-CV-239 (S.D. Miss. 2011), Commissioner Epps testified, "The point is if my child was locked up in prison I wouldn't be calling anybody. What I would be doing is coming up to that person's office, and I'd camp out there until they see me. . . . I'd stay there from 8 to 5." When asked whether such a camper would have been allowed to personally present his grievance to Epps, the Commissioner responded, "That's exactly right, they would."

[2] If the State defendants believe that this and other evidence show that they were not deliberately indifferent, they may file an appropriate summary judgment motion. Today's ruling is limited to administrative exhaustion.